WILLIAM WILCOX and Others, Respondents, *v.* JAMES H. WILLIAMS and Others, Appellants.

*Partnership — where it is at will equity will not enforce specific performance thereof — equal powers and rights, the test of a partnership.*

Where a partnership at will exists equity will not interfere to enforce specific performance of the agreement of partnership.

The true test of partnership is the intention of the parties, and where it does not appear that it was intended that all the parties to an alleged partnership should have equal powers and rights over the plant and the business, the court will be justified in concluding that, whatever may have been the nature of the agreement, no true partnership existed.

APPEAL by the defendants, James H. Williams and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Tompkins on the 31st day of May, 1895, upon the report of a referee, setting aside as null and void an assignment dated December 9, 1893, from the defendants Bufford and Kitson to the defendants Williams and Redfield, of three certain letters patent, and decreeing that Bufford and Kitson execute in due form a conveyance of such letters patent to the firm known as the Ithaca Drop Forge Company, composed of the plaintiffs and Bufford and Kitson.

*William N. Dykman,* for the appellants Williams and Redfield.

*Francis Forbes* and *Charles T. Haviland,* for the appellants Bufford and Kitson.

*George B. Davis* and *A. P. Smith,* for the respondents.

MERWIN, J. :

On and prior to January 1, 1891, the defendants Bufford and Kitson were the owners of three letters patent, duly issued to them, one on the 15th of July, 1890, and the others on December 9, 1890, upon certain improvements in pipe tongs or chain wrenches invented by Bufford. These letters were for the term of seventeen years. In the complaint it is alleged that on or about January 1, 1891, the plaintiffs and Bufford and Kitson entered into a co-partnership under the name of the Ithaca Drop Forge Company, for the purpose of

manufacturing pipe tongs or chain wrenches that should embody the improvements covered by the said patents; that by the terms of the agreement of partnership the plaintiffs were to furnish the necessary capital stock for the purpose of erecting a plant, purchasing machinery and tools, together with the necessary stock and appliances for the purpose of manufacturing the wrenches, and also furnish the necessary funds to defend any suit for infringement; that Bufford and Kitson agreed to assign to the company their letters patent so that the partnership would be the entire owners of the same.; that Bufford and Kitson were to receive one-fifth of the profits and the plaintiffs four-fifths; that the plaintiffs performed on their part, but Bufford and Kitson did not assign the patents, and, on the contrary, on the 19th of December, 1893, assigned the same to the defendants Williams and Redfield, who had knowledge of plaintiffs' rights. Judgment was asked that the rights of the parties in the patents be determined; that the assignment to Williams and Redfield be set aside and a conveyance be made by Bufford and Kitson to the firm. This action was commenced on February 6, 1894.

. The referee finds that a partnership was formed on or about. January 1, 1891, and by the terms of the agreement the plaintiffs. "were to furnish the necessary capital stock for establishing a plant, purchasing machinery and appurtenances for said purpose of manufacturing said chain wrenches, and introducing the same to the market, and also to advance to said company the funds necessary to defend any suit that might be brought for infringement of any letters patent of the United States by reason of the manufacture, use. or sale of such chain wrenches, and to prosecute infringers of said. three letters patent, Nos. 432,195, 442,306 and 442,569; that in consideration thereof, the said defendants George W. Bufford and John E. Kitson, agreed to transfer and assign to said company their said three letters patent, set forth as aforesaid, and that the said co-partnership was to have all right, title to and interest in and to the said three letters patent, and the exclusive right to manufacture and sell the said Champion chain wrench under the protection of said three letters patent, and that said Bufford and Kitson were to receive one-fifth of the said plant, machinery, patents, etc., and of the profits of said business, and that the plaintiffs were to receive the other four-fifths of the property, patents and of said profits; that the.

name adopted by said co-partnership was the "Ithaca Drop Forge Company," and the said co-partnership since that time has been and still is carrying on business under that name, making and selling said chain wrenches; that the plaintiffs have performed on their part, advancing large sums of money in establishing a plant and in purchasing stock and materials and in defending a suit for infringement; that on the 19th of December, 1893, the defendants Bufford and Kitson, without the knowledge or consent of plaintiffs, assigned the patents to the defendants Williams and Redfield who were not purchasers in good faith.

As matter of law it was decided that the assignment to Williams and Redfield was void; that Bufford and Kitson should execute to the firm a conveyance of the patents, and that the firm composed of the plaintiffs and Bufford and Kitson should be adjudged to have the right and title to the patents since January 1, 1891.

It is not alleged or found that the partnership, as claimed by the plaintiffs, was for any definite period. If so, it was a partnership at will and dissolvable at the pleasure of any of the parties. (Story on Part. § 269; *McElvey* v. *Lewis*, 76 N. Y. 373.) In such a case the general rule is that equity will not interfere to enforce specific performance of the agreement of partnership. (Pomeroy on Spec. Perf. § 290.) Equity will interfere " only when the partnership is for a definite period, or such decree is necessary to invest one of the parties with legal rights which he could not otherwise possess." (Parsons on Part. [4th ed.] § 205.)

There was undoubtedly some arrangement between the plaintiffs, either individually or as officers of a corporation hereafter referred to, and Bufford and Kitson, that resulted in the manufacture of the Champion chain wrench embodying the improvements covered by the patents in question. It appears that a contract to furnish a large quantity of them had been made with the assent of Bufford and Kitson, and this contract to a large extent had not been filled when Bufford and Kitson transferred the patents. It may be that to enable the plaintiffs or the corporation they may have represented, or the firm if there was one, to carry out this contract, a court of equity would give relief. It, therefore, becomes important to consider the question of what the relation was in fact between the parties.

By the judgment in this case it is determined that there was

between these parties a partnership from January 1, 1891, one of the terms of which was that the partnership should be the entire owner of the patents from that date and have a transfer thereof from Bufford and Kitson. It is in effect claimed by the appellants that the finding of the existence of a partnership is against the weight of the evidence, and that even if there was a partnership for some purposes it was not one of its terms that the firm should become the entire owner of the patents, or that they should be transferred to the firm.

Prior to 1891 there had been formed at Ithaca a corporation under the name of the " Hague Expansion Horse Shoe Company," with a fixed capital of $25,000. Its members were the plaintiffs and one Hague. Machinery had been purchased and a plant established for the manufacture of the Hague expansion horse shoe, and it had been to some extent manufactured. The plaintiffs had furnished the money necessary to purchase the machinery and plant in the expectation apparently of receiving therefor stock of the corporation. No stock seems to have been issued and the plaintiffs claim that they never turned the property over to the corporation, and this the referee in effect finds. It is not clear from the evidence that the corporation had no interest in the property, or that the plaintiffs had any right to turn it over to a new concern, as they claim to have done. The corporation is still in existence.

Bufford and Kitson were skilled mechanics, and had been in the employ of the plaintiffs or the corporation. About January, 1891, some arrangement was made under which the manufacture of the Champion chain wrench was entered upon. The arrangement, whatever it was, was not in writing. The machinery and plant used in the manufacture of the horse shoes was used in the manufacture of the wrenches, and also other machinery purchased by the plaintiffs or made at the factory. Bufford and Kitson continued at work at the factory, and were engaged, among other things, in making dies for use in making wrenches. The wages of each were reduced from twenty-one dollars a week to twelve dollars a week, one of the plaintiffs testifying that this was to continue until they got the wrench so that it was a paying business. There was talk about a change of the name of the Hague Expansion Horse Shoe Company to that of the Hague Drop Forge Company, and quite a number of

the wrenches first made were stamped as made by the Hague Drop Forge Company. In the spring of 1891 the name Ithaca Drop Forge Company was agreed on, and about that time Hague withdrew. The manufacture continued under the name of the Ithaca Drop Forge Company, and wrenches were placed upon the market. In September, 1891, a suit for infringement was brought in the United States court by the defendants Williams and Redfield against parties who were selling the wrenches, the plaintiffs Bufford and Kitson being also defendants therein. Evidence was taken in that suit in July, 1892, and in April, 1893. That suit was pending until after the transfer to Williams and Redfield, and it was then discontinued. In the summer of 1893 Kitson left the employ of the concern. Bufford, about the same time, left for a time, but returned and continued at work there until December, 1893, a short time before the transfer. Other work besides making wrenches was to a considerable extent being done at the factory. The wages of Bufford and Kitson seem to have been continued as they were fixed at the beginning of the enterprise.

No demand seems to have been made by plaintiffs for a transfer of the patents until the latter part of 1893, when it was apparent that Bufford and Kitson were dissatisfied, and were trying to sell their patents to other parties. Shortly before this the letter heads used in the business had been changed so as to state that the Ithaca Drop Forge Company not only manufactured the wrenches but owned the patents. This claim Bufford immediately disputed, and, after conferring with Kitson, offered to sell the patents to others. The change in the letter head, evidently made as an afterthought and in view of the controversy, does not aid the theory of the plaintiffs. The plaintiffs, before they started upon the enterprise, took advice in regard to the patents, and it is to be presumed that they knew of the necessity of a transfer in order to perfect ownership in themselves. The failure to have a transfer before they incurred expenses reflects on the character of the arrangement in fact made. As the title of the patents remained in Bufford and Kitson, they were presumptively the owners. (*Chamberlin* v. *Chamberlin,* 44 N. Y. Super. Ct. [12 J. & S.] 116.)

Up to the time Bufford left, about 7,000 wrenches had been made and put on the market, and there was an outstanding order for

several thousand more. The price of the wrench was from two dollars and fifty cents to eighteen dollars. It does not appear what amount of profits had been made. The situation of the accounts does not appear, and no dividends were made.

In January, 1891, the value of the patents in question was uncertain. They might turn out to be valuable, or they might be worthless. The project for the manufacture of the wrenches was clearly an experiment. It is not probable that at that time the plaintiffs would be, or were willing that Bufford and Kitson should have, as found by the referee, a fifth interest in their valuable property in return for what might be not only of no value but a source of considerable expense. The theory, as claimed by the defendants, is more plausible, that the manufacture was undertaken upon the understanding that if it proved a success the plaintiffs would give for the patents a certain amount of the stock of the corporation. This view is considerably corroborated by the testimony of one of the plaintiffs, given, as I infer, in 1892 in another action, to the effect that if the wrench proved a success the patentees were to be given for their patents a certain amount of the stock of the company.

The true test of partnership is the intention of the parties. (Parsons on Part. [4th ed.] § 54; *Central City Savings Bank* v. *Walker,* 66 N. Y. 428.) Here the question is what did the parties intend in January, 1891, when they entered upon this transaction? If a partnership, as found by the referee, then Bufford and Kitson had the same control over the property as the other parties and had like power to bind the members. Can it be said in this case that it was the intention of the parties that Bufford and Kitson should have the same powers and rights over the plant and the business that the plaintiffs had? It seems to me not.

Reference has thus far been made to some of the main features of the case. A careful examination of the evidence leads us to the conclusion that the finding of the referee of the formation of a partnership which involved the entire ownership by the partnership of the patents in question, is against the weight of the evidence. A reversal of the judgment must follow.

It may be that the plaintiffs have still some basis for relief to give them the protection of the patents as to the wrenches contracted to

be furnished with the knowledge and consent of the patentees. But this subject need not be considered here.

HARDIN, P. J., and PARKER, J., concurred.

Judgment reversed and new trial ordered, costs to abide the event.

