(19 App. Div. 438.)

### WILCOX et al. v. WILLIAMS et al.

(Supreme Court, Appellate Division, Third Department. July 6, 1897.)

PARTNERSHIP—EVIDENCE.

> Plaintiffs sued to set aside an assignment of patents by defendants, claiming that defendants had formed a partnership with them, and that the patents were part of the assets of the firm. No articles were drawn up, but it was claimed that the partnership was agreed upon in certain informal conversations, by which the interests of the parties in the profits and the assets were left unfixed. It appeared that the title to most of the property which plaintiffs were to put in was in other parties. On the other hand, the defendants claimed that they were merely to give a right to manufacture under their patents, on certain terms,—an arrangement consistent with sundry acts of the parties. *Held*, that a finding of the existence of a partnership was against the weight of evidence.

Appeal from judgment on report of referee.

Action by William Wilcox and others against James H. Williams and others. Judgment for plaintiffs, on the report of a referee, setting aside as null and void an assignment dated December 9, 1893, from the defendants Bufford and Kitson to the defendants Williams and Redfield of three certain letters patent, and decreeing that Bufford and Kitson execute a conveyance of such letters patent to the firm known as the Ithaca Drop-Forge Company, composed of the plaintiffs and Bufford and Kitson. From the judgment James H. Williams and others appeal. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

William N. Dykeman, for appellants Williams and Redfield.

Francis Forbes and Charles T. Haviland, for appellants Bufford and Kitson.

George B. Davis, for respondents.

PARKER, P. J. In December, 1895, a new trial was granted in this case by the general term in the Fourth department. See 92 Hun, 250, 36 N. Y. Supp. 944. It was then suggested by the court that the plaintiffs' case was defective in two particulars: First, that for aught that appeared the alleged partnership was to be one at will, dissolvable at the pleasure of any of the parties, and that, therefore, equity would not compel the specific performance asked for; secondly, that the finding by the referee of the formation of a partnership, which involved the entire ownership by the partnership of the patents in question, was against the weight of evidence. The first defect has been remedied by the evidence and findings now contained in the record be-

fore us.   In my judgment the case is not materially changed, so far
as the second defect is concerned.   The action proceeds on the theory
that by a parol agreement a co-partnership was formed, consisting of
six partners,—the four plaintiffs and Bufford and Kitson; that, al-
though the latter two have never executed the written assignment
necessary to transfer the legal title of the three patents in question to
the firm, nevertheless the firm, under such agreement, became the equi-
table owner thereof; and that Bufford and Kitson subsequently, in
fraud of the firm, transferred the same to the defendants Williams and
Redfield, who purchased knowing of the equitable interest that the
firm had therein.   The right to the relief asked for, therefore, evidently
turns upon the correctness of their claim that the firm had, under the
contract which created it, acquired the right to an assignment of the
patents.   A careful reading of the conversations had between the
parties upon that subject, as narrated by the plaintiffs themselves,
leads me to the conclusion that no such co-partnership as they claim
was ever entered into.   The true test of a partnership is, of course, the
intention of the parties.   What was ever said between the parties,
according to the plaintiffs' statements, indicating an intent then and
there to form a co-partnership, and to vest in the firm the property to
be furnished by themselves and by Bufford and Kitson?   Can the
loose and indefinite talk had at the Clinton House on .the occasions
testified to be construed into a contract creating a co-partnership, and
fixing the articles under which it was to exist?   No amount of capital
fixed, no share which each of the parties were to have in the capital or
assets agreed upon.   True, it is testified that Bufford and Kitson were
to have one-fifth interest in the business, and that the other four were
to have four-fifths.   But what share each was to have was left unde-
termined, and moreover a share in the business is by no means fixing
the shares which each is to have in capital and assets of the company.
Also, it appears that the machinery and most of the plant which it is
claimed the plaintiffs were to put into the firm as their share of its
capital had been purchased in the name of the Hague Expansion
Horseshoe Company, and it seems clear that the title thereto was then
in that corporation.   Yet no means were taken or suggestion made
that either it or the title to the patents should be transferred to the
co-partnership then formed.   Is it credible that a contract was then
made, forming a co-partnership, and giving to each of the parties there-
to a co-partner's interest in, and right to control, all of the property
which each was to put into the firm?   Did Bufford and Kitson each
take a partner's interest in the machinery and plant then owned by
the Hague Expansion Horseshoe Company?   I do not see how it can
be claimed that they did.   And yet, if the contract for co-partnership
for which the plaintiffs contend was then made and completed, they
should have taken a partner's interest in that property, the same as
the plaintiffs would in their patents.   It is no explanation to say that
the plaintiffs could obtain title to that property for the firm whenever
they wanted it.   So could Bufford and Kitson assign the patents when-
ever wanted.   The point is that no one then seemed to be of the opin-
ion that a transfer of either the patents or the machinery was then
needed.   And for more than two years afterwards no measures were

taken to put the title to either in the firm. It seems clear to me that during all the negotiations testified to by the plaintiffs the idea that a co-partnership was being formed did not occur to any of the parties. Something was evidently to be done or settled before either party was called upon to "furnish," as they term it, the property which was to constitute the capital of the firm.

On the other hand, the defendants claim that no talk whatever was had concerning a co-partnership; that all of the negotiations were had between Bufford and Kitson, on the one hand, and the Hague Expansion Horseshoe Company, on the other; that it was agreed that such company should manufacture the Champion chain wrench for a long enough time to discover whether it would prove profitable, assisted by Bufford and Kitson, who were to work for reduced wages, and that, in the event that its manufacture and sale proved a success, the corporation should take the patents, and issue to Bufford and Kitson therefor one-fifth of its capital stock, viz. $10,000; that all the manufacturing which was subsequently done was carried on under that agreement; and that subsequently, when it was ascertained that the parties could not work successfully together, Bufford and Kitson withdrew from the arrangement, and sold their patents to Williams and Redfield. I am persuaded that this claim is sustained by the great weight of evidence in the case. It is in harmony with the way in which they transacted the business for upward of two years. It explains why the ownership of the property and patents was not transferred, and explains why, when the meeting was first called at the Clinton House to arrange a plan of action, Hague was notified to be present. This fact, not disputed by the plaintiffs, is utterly irreconcilable with the idea that such meeting was had to agree upon any contract between the six. There are many declarations of Bufford and Kitson, and some circumstances put in evidence, which it is urged conclusively disprove this claim of defendants, and substantiate the idea that a co-partnership was actually formed. To me they do not seem to possess the force that is claimed for them. Thus, the fact that written authority was given to Green, Tweed & Co., signed by Bufford, to sell all the wrenches they should make for a year, describing therein the wrenches as "now being owned and manufactured by the Ithaca Drop-Forge Company," is claimed as a conclusive admission by Bufford that such company had acquired the ownership of the patents. But, considering the circumstances under which this admission was made, it by no means goes to that extent. Before undertaking to sell the wrench, the agent of Green, Tweed & Co. naturally wanted to know whether the company had the right to make and sell them. He wanted to know who the patentee was, and whether the company controlled the patents. In answer to such inquiries, Bufford, the patentee, signed the statement, which is simply to the effect that, so far as its deal with Green, Tweed & Co. was concerned, the company did own the right to make and sell the wrenches. That is all that Bufford meant by that declaration, and to that extent it was entirely correct, and consistent with the arrangement under which he says the wrenches were being manufactured. Again, in September, 1893, just before Bufford and Kitson withdrew from the arrangement, they wrote a letter to the

596   46 NEW YORK SUPPLEMENT  (Sup. Ct.

and 80 New York State Reporter.

same firm, in which plaintiffs claim they conclusively acknowledge the existence of the co-partnership. On the contrary, I think that, while such letter indicates that an arrangement for the manufacture of wrenches under their patents existed between them and some concern which Slocum had the right to control, it by no means admits a co-partnership which was the owner of, or had an equitable right to, their patents. They say they are willing to purchase the interest of the other party, or to sell their own, but in referring to their own interest they are particular to describe it as their patents, thus indicating that they still considered themselves the owners of the patents, and not, as co-partners, the owners of a one-fifth interest in the whole property. Instead of admitting, it rejects, the idea of a commingling of their interests as co-partners. The evidence is too voluminous to go into a detailed analysis of it. It is sufficient to say that it strongly sustains the defendants' claim, and that in my opinion the referee, upon this question of fact, should have found in their favor. In this respect the case is not changed from what it was when last before the appellate court, and the conclusion then reached must still prevail. The result is that the judgment must be reversed.

Judgment reversed, the order of reference vacated, and a new trial granted; costs to abide the event. All concur.