47 So.2d 141 (1950)
ROSEN et ux.
v.
SHINGLEUR.
No. 3262.
Court of Appeal of Louisiana, First Circuit.
June 29, 1950.
Weber & Weber, Baton Rouge, for appellant.
Sanders, Miller, Downing & Rubin, Baton Rouge, for appellee.
DORE, Judge.
On June 13, 1947, plaintiffs, Dr. Isadore I. Rosen and his wife, Mrs. Estelle Rosen, brought this suit against defendant for property damage and injuries allegedly incurred and received by them, arising out of an alleged automobile accident on February 1, 1947, at about 7:45 P.M. Plaintiffs alleged that the said alleged accident was due solely to the gross negligence of the defendant in operating his motor vehicle at an excessive rate of speed, in failing to keep his vehicle on its proper side of the road, and in driving under the influence of intoxicating liquors.
After several exceptions being filed by the defendant, which exceptions were overruled, and the filing of a supplemental petition *142 by the plaintiffs, defendant filed his answer in which he denied the negligence imputed to him; in further answer, he alleged that the said accident was solely and proximately caused by the negligence of the plaintiffs and Wilson Byrd, a third person involved in the said accident, as follows:
"(a) The said Wilson Byrd was negligent in failing to maintain a proper lookout, in failing to keep his vehicle under proper control and in driving to the left of the center line of the highway in the face of oncoming traffic (being defendant's automobile).
"(b) That the petitioner, Dr. I. I. Rosen, was negligent in following the vehicle driven by Wilson Byrd nearer than was reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon the highway.
"(c) That petitioner, Mrs. Estelle Rosen, was negligent in failing to warn her said husband that he was following the vehicle ahead nearer than was reasonable and prudent under the circumstances."
In the alternative, defendant, in bar of plaintiffs' recovery, alleges the contributory negligence of each plaintiff in the manner set forth in (b) and (c) supra.
Upon these issues the case was tried. The trial judge, in his written reasons for judgment, analyzes the facts and contentions contained therein, and came to the conclusion "that the collision with both the Byrd and Rosen cars was due solely to the fault and want of care of the defendant. His recklessness in my opinion was largely, if not entirely, due to the fact that he was intoxicated." In accordance with his written reasons assigned, on April 6, 1948, he rendered judgment in favor of plaintiff, Dr. I. I. Rosen, and against the defendant, John G. Shingleur, in the full sum of $1,100.00, representing property damage and physical suffering, with further judgment in favor of plaintiff, Mrs. Estelle Rosen, and against the defendant, John G. Shingleur, in the full sum of $1,000.00, together with legal interest from judicial demand, until paid, and cast the defendant for all costs. The defendant did not appeal from the judgment.
On April 19, 1948, plaintiffs obtained a writ of fieri facias, coupled with garnishment to Esso Standard Oil Company, Inc., ordering the sheriff of the Parish of East Baton Rouge to seize all the property real and personal, rights and credits of John G. Shingleur, defendant.
In answer to interrogatories propounded to it, the Esso Standard Oil Company, Inc. admitted that defendant, John G. Shingleur, was in their employ as a laborer crewman, first class, in the Mechanical Department, at the hourly rate of $1.765, equivalent to $141.20 each bi-weekly pay period, being paid by check every other Friday. At the time of service of the interrogatories, it was indebted unto defendant in writ in the amount of $85.04, for services rendered from April 12, 1948 to April 19, 1948, which sum would be payable to him on April 30, 1948.
On a rule taken by plaintiffs against the Esso Standard Oil Company, as garnishee, the Court, on April 27, 1948, rendered judgment against that company to pay "to the Sheriff of the Parish of East Baton Rouge, Louisiana, the unexempted portion of such wages and earnings of said John G. Shingleur, earned or to be earned, sufficient to pay and satisfy said writ."
On October 14, 1948, defendant, John G. Shingleur, filed a petition in bankruptcy in the United States District Court for the Eastern District of Louisiana and was adjudicated a bankrupt on October 18, 1948. In his bankruptcy schedules, he listed amongst his creditors, the plaintiffs herein for the amounts of their judgment and costs.
On May 5, 1949, defendant John G. Shingleur obtained his discharge in bankruptcy, which discharged him "from all debts and claims which are provable by said acts against his estate, and which existed on the 14th day of October, A.D., 1948, * * * excepting such debts as are by law excepted from the operation of a discharge in bankruptcy." (Italics ours).
On September 16, 1949, the Trustee appointed for the Bankruptcy Estate of defendant filed his first and final account, on which said account the said Trustee listed the plaintiffs and as such were entitled to *143 receive from the said Bankruptcy Estate the following: (1) Mrs. Estelle Rosen, $137.87, and (2) Dr. Isadore I. Rosen, $124.42.
On November 23, 1949, plaintiffs obtained a rule on defendant John G. Shingleur to show cause, on December 5, 1949, at 10:30 A.M., why it should not be declared that the judgment rendered herein, and the garnishment thereunder, should not be decreed to be in full force and effect and immediately executory. This rule was obtained by the plaintiffs on the allegations that the judgment rendered in this case and the garnishment issued thereunder were based upon liability for wilful and malicious injuries to the persons and property of plaintiffs and that his discharge in bankruptcy does not affect his obligation since the debt due the plaintiffs is a debt not affected by discharge in bankruptcy, it being specifically excluded by the provisions of the United States Bankruptcy Law, 11 U.S.C.A. § 35.
The defendant appeared, and, first, filed an exception of want of jurisdiction ratione personae and ratione materiae, secondly, an exception based on the ground that he had been adjudged a bankrupt; that he had received his "final discharge on all debts and claims made provable by said acts against his estate"; that the plaintiffs had appeared in the bankruptcy proceedings, had filed and proved their claim and had received from the Trustee of his estate, the sum of $262.29, as ordinary creditors of the said bankruptcy estate. In his answer, he sets out practically the same facts as alleged in his second exception and he further contends that the judgment obtained by the said plaintiffs does not show a "wilful or malicious act" on his part.
On these issues, the rule was duly set for trial. The trial judge, in a lengthy and well reasoned written opinion, overruled the exceptions and made the rule absolute. Defendant has appealed.
In this Court, defendant has abandoned his plea to the jurisdiction of the court ratione personae. Therefore, the first question for consideration here is the defendant's plea to the jurisdiction of the court ratione materiae, which plea was overruled by the District Court.
Anent this plea, defendant contends that the lower court did not have jurisdiction to inquire into the matter of whether or not the judgment had been discharged since he had listed the plaintiffs as his creditors in the bankruptcy proceedings, since they had appeared and proved their claim therein, since he had been discharged (against their opposition), and since they had shared and received their pro-rata part of his net or distributal estate, therefore, the jurisdiction of the matter in controversy was entirely within the jurisdiction of the Bankruptcy Court and the plaintiffs, having submitted to that jurisdiction, is bound by his discharge. Defendant cites and relies on the case of Personal Finance Co. of Louisiana v. Thomas, La.App., 167 So. 475.
A mere reading of that case clearly shows that it does not uphold such a contention and is clearly inapposite to the case at bar. That decision, as we construe it, holds that a creditor who asserted his claim against a debtor in bankruptcy proceedings is not entitled to maintain suit in our state court against bankrupt debtor prior to his discharge on the ground that loan was obtained by debtor by fraudulent representations, and hence, debt was not dischargeable in bankruptcy. (Italics ours). In our case, the defendant received his discharge in bankruptcy, in so far as the evidence or the record discloses without plaintiffs opposing the same, long before the present rule was filed.
In overruling the plea, the district judge, after citing several cases, states: "These cases, it seems to me, are ample authority to justify the conclusion that this court does have jurisdiction ratione materiae to determine `from the entire record of a suit' whether a particular debt was dischargeable. See Aetna Casualty & Surety Co. v. Sentilles [La.App.], 160 So. 149, supra."
The position of the trial judge is fully sustained by the ruling in the case of Succession of Bayly, 30 La.Ann. 75, wherein the Supreme Court held that the State courts have jurisdiction to determine *144 whether a debtor is released from certain debts, by his discharge in bankruptcy.
In the Aetna case, supra, we passed upon the dischargeability of a debt by the bankruptcy court, and held that such a question must be determined from entire record of suit.
In the case of Armour Fertilizer Works v. Peninger, La.App., 158 So. 241, the Second Circuit, Court of Appeal also passed on the dischargeability of a debt by the bankruptcy court, and likewise did the Supreme Court in the case of Brown v. Garrard & Craig, 28 La.Ann. 870.
We find no error in the district judge's ruling.
Section 17, sub. a (2) of the Bankruptcy Act of 1898 as originally enacted was amended in 1903 so as to provide that discharge shall release a bankrupt from all "provable debts, except such as * * * are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another * * *." (Italics ours).
This brings us to a consideration of the question, which question appears to be of first impression in Louisiana, whether the liability of defendant arose from "willful and malicious injuries" to the persons and property of the plaintiffs.
This question must be determined from the entire record of this suit. The pertinent part of the record contains plaintiffs' petition, the answer of the defendant, concise and well written reasons of the trial judge for his final decree, in which said written reasons he gives a complete summary of the facts, his conclusions of these facts, a discussion of the contentions of the parties and the law involved, and the final decree rendered by virtue of these written reasons. It may be stated at this time that the record lacks a transcript of the evidence taken at the trial. However, we can, and we will, consider the written reasons of the trial judge contained in the record as a "statement of facts" as required by Code of Practice, Article 603, it being sufficient to determine the question involved in this case.
In determining this question, the learned trial judge thoroughly analyzed both the facts and the law applicable to this case in his written reasons for judgment. It is supported not only by logic and public policy, but by the overwhelming weight of judicial authority. We adopt them as our own.
"The affirmative of this question is predicated on the remarks made by this Court in the written opinion, quoted supra, wherein it was said that the injuries to plaintiffs' persons and property was due to the gross negligence of defendant in operating his vehicle at an excessive rate of speed, in failing to keep on the proper side of the road, and in driving while under the influence of intoxicating liquor.
"Defendant on the other hand, maintains that even if all the Court said was correct, it fails to constitute evidence of `wilful and malicious' injury, and in oral argument his counsel called attention that the judgment itself contained no recitation about recklessness or intoxication of defendant. This latter statement is not altogether correct for the judgment was rendered `for written reasons assigned by the Court' which were filed in the record.
"Counsel for plaintiffs have cited and quoted from Selverstone on Bankruptcy, page 147, Section 188, as follows:
"`A wilful and malicious act under the bankruptcy law does not involve, necessarily, hatred or ill will, but may arise from a wrongful act done intentionally, without just cause.' McIntyre v. Kavanaugh, 242 U.S. 138 [37 S.Ct. 38, 61 L.Ed. 205]; In re Wernecke [D.C.], 1 F.Supp. 127, `Maliciously does not mean that one must have some special feeling of ill will. It means consciously doing something which one knows or should know to be unlawful.'
"To adopt these words as sufficient in all automobile accident cases, as correctly stating the law pertaining to `wilfulness' would in my opinion, be to go too far, because there are undoubtedly frequently acts of ordinary negligence resulting in injury which could not be classified as wilful and malicious.
*145 "It seems to me that the degree of negligence should be the determining factor in each case. If for instance, one deliberately gets drunk and, regardless of the rights of pedestrians or other motorists, projects his automobile on the highway when in no physical or mental condition to drive, I am of the opinion that his act is or should be classified as `wilful and malicious'.
"Learned counsel for plaintiffs has cited various authorities sustaining this view, too numerous to mention.
"It is appropriate however, that I quote from his very able brief, as follows:
"`In an article by Hubert F. Laughern, United States Referee in Bankruptcy, Los Angeles, California, appearing in volume 51 of the Commercial Law Journal, page 61, (1946), already cited above, the author makes the following observations in an article on the very point here in question.
"`"One of the last determinations of the question was in the case entitled Breitowich (for Margaret Tharp) v. Standard Process Corporation of the Illinois Appellate Court [323 Ill.App. 261, 55 N.E.2d 392]. The Court determined that a certain judgment in an automobile accident case was a `wilful and malicious injury' to the defendant and was not dischargeable. The United States Supreme Court, however, denied certiorari on January 29, 1945 [323 U.S. 801, 65 S.Ct. 561, 89 L.Ed. 639]. A further discussion of the said Breitowich case will appear hereinafter." Emphasis supplied).
"`The author discusses the fact that there is a difference of authority on the question and goes on to attempt to determine what is the true meaning of the statute:
"`"Having in mind that to be non-dischargeable in bankruptcy the judgment must result from a `wilful and malicious' injury, let us consider whether or not Congress intended that there must be over wilful intent to injure. It is quite obvious that it was the intent of the legislators in forming the bankruptcy statute to discharge those debts which were the result of plain accident and misfortune. But was it the intent to discharge those debts resulting from automobile accidents wherein the negligence was so gross as to charge the defendant with knowledge that the careless and unlawful operation of his automobile might well cause the resulting injury?
"`"Let us take a hypothetical case. The defendant, at a high and illegal rate of speed drove his automobile against the traffic signal and through an intersection crowded with pedestrians who were injured in the resulting inevitable accident. There was no wilful desire or intent to injure the pedestrians; but it was quite obvious that an injury would most certainly result.
"`"The facts are very similar to the case of In the matter of Frank Dutkiewicz [27 F.2d 334, 335], and the United States District Court in determining that the judgment was not dischargeable said, `Special malice is not required. It is sufficient to constitute a willful and malicious injury to person or property that the wrongful act is intentionally done without just cause or excuse. Peters v. U. S. ex rel. Kelley [7 Cir., 177 F.2d 885]. * * * Wanton and reckless conductthat is, acts done with an utter disregard of the rights and safety of another or his propertymay constitute willful and malicious injury to the person or property of another.'
"`"And using the same reasoning, an automobile accident judgment was held to be non-dischargeable in the case of In re Kubiniec [D.C., 2 F.Supp. 632], the Court there defining a wilful injury as: `That degree of neglect arising where there is a reckless indifference to the safety of human life, or an intentional failure to perform a manifest duty to the public, in the performance of which the public and the party injured had an interest.'"'
"Counsel also cites Doty v. Rogers, [213 S.C. 361] (49 S.E.2d 594), a South Carolina case. There the Court said among other things `The complaint of the respondent alleged that her personal injuries were caused by the "willful, unlawful, and malicious acts and conduct of the defendant (appellant) in running into the plaintiff's (respondent's) car as aforesaid, while he *146 was intoxicated, while driving on the wrong side of the road, while violating the law as to speed and that part of the road he should travel on while meeting vehicles, and while making no effort to avoid a collision with the automobile in which plaintiff (respondent) was riding."'
"The Court in that case upheld the judgment of the lower Court holding that within the sense of the Bankruptcy law, the act of defendant was `wilful and malicious' and, in my opinion, properly so.
"The appalling number of deaths in this country, and in this State resulting from the acts of drunken drivers forbids the conclusion that their acts are excusable on are anything less than malicious.
"The Bankruptcy Act, in my opinion, was never intended to shield such persons from the consequence of their indifference and utter disregard of the safety of others.
"I am in hearty accord with the holding of the South Carolina Court and trust that its ruling on this important question will become the jurisprudence of Louisiana. See also Ex Parte Cote, [93 Vt. 10], 106 A. 519; Harrison v. Donnelly [8 Cir.], 153 F.2d 588; Marguilles v. Garwood [178 Misc. 970], 36 N.Y.S. 946; Fitzgerald v. Herzer [78 Cal.App.2d 127], 177 P.2d 364.
"We come now to the last question involved and that is whether a debtor can wait until after the discharge of the bankrupt before he raises the question of the dischargeability of the debt.
"The authorities already cited, Succession of Bayly; Aetna Casualty and Surety Co. v. Sentilles, supra, in effect are, that this can be done.
"See also the following Federal cases: In re Anthony [D.C.], 42 F.Supp. 312; In re Weitzman [D.C.], 11 F.2d 897; In re Hadden [6 Cir.], 142 F.2d 896.
"I am of the opinion that the record in this case sustains the conclusion previously reached that the defendant's liability resulted from intoxication and gross negligence; that therefore his act was `wilful and malicious' in the sense of the Bankruptcy Law and that his discharge did not affect his liability unto plaintiffs."
We have checked carefully the authorities listed and quoted from by the trial judge, and we have found them to be correctly quoted.
Being in full accord with the trial judge in his conclusion, the judgment appealed from is affirmed.