LOTTINGER, Judge.
This cause is a rule to show cause why a judgment secured by petitioner against defendant should not be declared to be in full force and effect despite a voluntary bankruptcy entered into by defendant. From judgment below in favor of defendant and dismissing the rule, the petitioner has taken this appeal.
The facts of the case, as found by the Lower Court, are as follows:
“On or about October 8, 1951, Sparks-Franklin, while driving an automobile,, ran into a minor child of the plaintiffs.. The accident happened on North 47thi Street in the City of Baton Rouge,. Louisiana. The child died as the result of the injuries received in said accident.
“On April 18, 1952, the plaintiffs-filed suit against the defendant for damages resulting from the death of their said child, alleging that the proximate cause of its death was the willful, wanton and reckless acts or conduct of the defendant, more specifically alleged as follows:
“(a) defendant drove his car at an excessive rate of speed of about 25 miles per hour through an area which defendant knew, or ought to have *311 known, was inhabited by many small children.
“(b) defendant failed to keep a proper lookout, or exercise proper diligence or caution, while driving his car in an area which defendant knew, or ought to have known, had many small children.
“(c) defendant failed to drive his car in his proper right-hand lane of North 47th Street, while driving in a northerly direction, and instead drove his car either in the middle of the road or on the left or west side lane thereof.
“(d) defendant failed to diminish the speed of his car, or to bring his car under effective control, while driving his car in an area which defendant knew, or ought to have known, had many small children.
“(e) Defendant failed to turn his car out of the path of petitioners’ child and instead, drove his car recklessly and wantonly in the direction of petitioners’ child, although defendant had ample notice of the child’s presence and could have avoided striking same with his (defendant’s) car.”
The defendant answered plaintiffs’ petition, admitting the accident but denying the alleged acts of negligence.
Paragraph 2 of defendant’s answer reads as follows:
“ ‘That he admits the allegations contained in Paragraph II, and further answering, shows the the death of said child was not caused by any negligence whatsoever, direct or proximate, on the part of defendant, and that said child was killed as a result of an unavoidable accident, occasioned entirely by the contributory negligence of said minor child by running in front of defendant’s car with such suddenness and in such a manner that defendant could not and did not have time to avoid the impending collision.’ ”
On trial of the case the Court, Judge Jess Johnson of Division C, rendered judgment for plaintiffs in the sum of $1,000.00, with interest. The judgment reads as follows:
“ ‘This matter came on for trial in accordance with previous assignment. Present: Franz Joseph Baddock, counsel for petitioners Charles Matthews and Hattie B. Matthews; Jack P. F. Gremillion, counsel for the defendant, Sparks Franklin.
“ ‘When, on considering the pleadings, the evidence introduced, the arguments of counsel, the Court being of the opinion that the law and the evidence were in favor of the petitioners, and against the defendant, for reasons orally assigned, the Court expressed the desire to hear additional evidence touching the financial status of defendant, in order to more properly determine the quantum of damages; and when, on showing made to the Court in accordance with a rule nisi, on Monday, December 1, 1952, the financial status of defendant was determined by the Court, at which showing both the counsel for petitioners and the counsel for defendant were present, the Court being of the further opinion that judgment in the sum of one thousand and no/100 ($1,000.00) dollars, together with legal interest on this sum at the rate of five percentum (5%) per an-num from date of judicial demand until paid, and all costs of this suit.
“ ‘It Is Ordered, Adjudged and Decreed that, for reasons orally assigned, the law and the evidence being in favor of petitioners hereof, that judgment is rendered in favor of petitioners, Charles Matthews and Hattie B. Matthews, and against the defendant, Sparks Franklin, in the sum of one thousand and no/100 ($1,000.00) dollars, together with legal interest on this sum at the rate of five percentum (5%) per annum from date of judicial demand until paid, and for all costs of this suit.
“ ‘Judgment Read Rendered and Signed in open Court at Baton Rouge, *312 Louisiana, on this the 2nd day of December, in the year 1952.
“‘Signed: Jess Johnson, Judge.’
“The testimony offered on the trial of the case was not taken down in long or short hand, and the trial Judge gave no written reasons for judgment.
“After the rendition of the aforesaid judgment against him, the defendant filed a petition in bankruptcy and in due time obtained his discharge. Subsequent thereto, plaintiff instituted garnishment proceedings against the defendant under said judgment, making defendant’s employer, the Esso Standard Oil Company, party garnishee, and at the same time procured an order directed to the defendant to show cause “why petitioner’s judgment ought not to be declared of full force and effect, and executory.”
The Lower Court held against petitioner on the said rule and the same was dismissed. The petitioners have taken this appeal.
A discharge in bankruptcy discharges one from all debts and claims which are made provable by the bankruptcy act, except such debts as are excepted by the act. 11 U.S.C.A. § 35, provides in part as follows :
“A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part except such as
“(1) * * *
“(2) are liabilities for obtaining money or property by false pretenses or false representations, or for willful and malicious injuries to the person or property of anotherJ\
The petitioner claims that the death of their child was due to the willful and malicious acts of the defendant, and that the record in this proceeding substantiates -said claim. Defendant denies that such is correct.
The record before us consists of the petition, the answer and the judgment. There was no transcript of testimony taken, nor were the trial court’s reasons for judgment reduced to writing.
The petitioner bases his claim on the holdings of Morris v. Fidelity & Deposit Co., Tex.Civ.App., 217 S.W.2d 678, 10 A. L.R.2d 432, and In re Minsky, D.C., 46 F.Supp. 104.
In Morris v. Fidelity & Deposit Co. the petitioner sued in Texas on a judgment obtained by default in the courts of Kansas. Even though the Kansas judgment did not specify that it was rendered on a claim which was not dischargeable in bankruptcy,, the Texas Court permitted the petitioner to introduce into evidence the petition which was filed in Kansas, on which the Texas' Court determined that the claim sued on was not discharged in bankruptcy.
In the Minsky case, supra, the petitioner had obtained a judgment by default on a. petition which alleged that the defendant had “maliciously and willfully” induced a breach of contract which the creditor had with another party. Following the rendition of judgment in favor of petitioner, the defendant went into bankruptcy. The petitioner then took a rule against defendant to determine the dischargeability of the judgment. The Court; in upholding the judgment for petitioner, held that reference may be held to the pleadings upon which a default judgment was rendered in order to determine whether it had been discharged by bankruptcy.
The defendant claims that the above cases pertain to judgments by default and that they are, therefore, not applicable to the present suit.
After the rendition of the judgment below, the defendant approached Judge Johnson, who presided at the original suit, and requested that he prepare a statement of facts showing his findings in the suit. Such statement is attached to defendant’s brief, and is referred to in the petitioner’s brief. The said statement is as follows:
*313 “This case was tried before me on October 31, 1952, and orally argued and submitted for decision on November 3, 1952, when for oral reasons assigned judgment was rendered in favor of the plaintiff and against the defendant. On the trial of the case by agreement of counsel for both sides the testimony given by witnesses and the parties was not taken down by the court reporter, but I personally made shorthand notes of the pertinent testimony for my own information and convenience. These notes were made as each witness testified, but without the interrogatories of counsel and I now transcribe these notes as my findings of fact, as follows:
“Hattie Matthews, witness for plaintiff:
“I live at 1332 North 47th Street. The child was my son. The child was two and a half years old. I did not see the accident. I was coming from- the store. I was about one hundred feet away. I saw the accident immediately after it happened. The first I saw was •when they were getting my baby from under the car. It was on North 47th' Street. His car was more to the left or west side of the street. He was heading north. Franklin had my baby in his arms when I saw the child first. Percy Patrick put the child in the back of Franklin’s car and took the baby to the hospital. The funeral expense was $162.00. Defendant lives on the same street as I do. He has lived there for several years. There are many small children in this area. They are from five to eight years old. Some under. The accident happened in front of my house. There are nineteen small children in that vicinity. I had been to the grocery store about half a block north from my house. They were getting the child from under the left fender when I saw it.
“Cross Examination:
“When I went to the store I left the child with his little sister five years old. I left them playing in the back of the house inside the fence. I have been living there six years. The children were playing good in the back and I went to the store quick to get a quart of milk. I did not see the car coming toward me. I did not see the child go into the street. I heard hollering, but I did not see the wreck. I did not go in the car with the baby to the hospital. I waited at home until my husband came in about twenty minutes.
“Charles Matthews — plaintiff:
“I am the father of the child which was killed. They called me at Wolf’s Bakery to come home. When I got home the car was gone. I went to the hospital. The child was lying on the back seat of .Sparks Franklin’s car. He was dead. We never gave the children permission to play in the street. Franklin traveled that street more than anyone else living on the street.
“Naomi Wilson, witness for plaintiff:
“I was in my front room of my house. I live across the street a little south of the Matthews. I did not see the accident. I saw the car when it passed and heard the noise. It was like he had hit something. I jumped up and ran to the porch. The first I saw was him with the baby in his arms. I did not see him pull the child from under the car. The car was more on the west side of the street headed north. I don’t know what speed he was traveling, but when he passed my house it seemed like about twenty five miles per hour.
“Cross Examination:
“The car was not going very fast. I did not hear him put on his brakes. I did not look for skid marks. I did not leave my porch.
“Percy Patrick, witness for plaintiff:
“I live one house from Charles Matthews. ■ Same side of the street. I did not see the accident. I was painting in *314 my house. When I came out Sparks had the baby in his arms. I heard a blow on the outside and rushed out. I did not think the baby was dead at the time. I went with them to the hospital. The car driven by Franklin was headed north. I got in the car to go to the hospital from the east side of the car. I did not have to step in the ditch, but did not pay any attention to it.
“Cross Examination:
“As soon as we got to the hospital the doctor came out and pronounced the baby dead. There was no sign of life on the way to the hospital.
“E. R. Thompson, witness for plaintiff:
“I am a patrolman of the City Police Force. I went to the scene of the accident. We found skid marks identified by the driver of the car. It appeared that the skid marks were about nine feet before and six feet after the impact. The point of impact showed that after the wheel hit the child it dragged it. I examined the brakes on the car and they were good. It was a 1948 Chevrolet. The defendant said the child was coming from the west toward the east. The defendant said he was about three feet away when the child darted in front of his car. The skid marks were a little more to the west side of the road. They were four paces west of the east curb and three paces east of the west curb. The street is gravel and twenty-one feet wide from ditch to ditch. Franklin said he was going about twenty five miles per hour. The weather was fair.
“Sparks Franklin, defendant, called on cross examination:
“I moved on that street in 1947. When I first noticed the child he was as close to my fender as that little wall (indicated wall estimated at three feet). I did not see any child in the road. The child came from the left hand side of the street. It was not in the street and I did not see it until it was running across toward the front of my car. There were no other children out there. I always pay attention to see if children are in the street because they often play in the street. This was a cold day. I was driving about the middle of the street. It is a narrow gravel street. The left side of the car was between four or five feet from the west edge of the road. I have been working at the Standard Oil Company about ten years.
* * * * * *
"My decision for the plaintiff was based on the following appellate court decisions : Keller v. Stevenson, 6 So.2d
569; Smith v. [City of] Alexander, 178 So. 737; Stamps v. Henderson, 25 So.2d 305; Abate v. Hindese, [Hirdes, 9 La.App. 688], 121 So. 775; Brown v. Wade, 145 So. 790; Cimo v. Karstendiek, 173 So. 548; Doyle v. Nelson, 11 So.2d 645”
The above statement of facts show that on the day of the accident the defendant was traveling north on 48th Street, in the City of Baton Rouge. He was proceeding in approximately the middle of the street, and saw no children in the vicinity, although he knew that they frequently played in the street. Suddenly he noticed the two and a half year old child running into his path, and the child was struck by the automobile and killed. Although the defendant testified that he did not notice the child until he was about three feet from it, it is apparent that he noticed the child at a further distance, as the police officer testified that the defendant skidded about nine feet before the impact and about six feet after-wards. The skid marks, of approximately fifteen feet indicate that the defendant was driving at a speed of about twenty miles per hour immediately prior to the accident.
Thus we have the situation where a person is proceeding along an apparently deserted street at a speed of about twenty miles per hour. The statement of facts *315 shows that he was traveling in about the center of the street, and that the street was about twenty-one feet in width. The person failed to notice a child, of tender years, suddenly dart into the street, and, as a result, the child was killed. Although we do believe that the decision of the lower court was correct in holding the defendant negligent, we do not believe that he was guilty of willful negligence, as would place him under the exception of the bankruptcy laws.
In Volume 8 C.J.S. Bankruptcy, § 574d we find as follows:
“A claim or judgment based merely on negligence is not within the exception, not even if the negligence involved was charged to be reckless or wanton. It is otherwise if the negligence Í9 predicated on, and established by, a willful and intentional or malicious act.”
We also find in American Jurisprudence Volume 6 under Bankruptcy Sec. 786 the following:
“Injuries in Automobile Accidents.— What constitutes wilful and malicious injury growing out of an automobile accident, within the provision of the Bankruptcy Act relating to discharge, depends in each case upon the particular facts, so that it is difficult, if not impossible, to formulate a general rule applicable to all -cases. It can, however, be safely asserted that liability for simple negligence in the operation of a motor vehicle which results in an injury to another is not excepted from a discharge in bankruptcy as a wilful and malicious injury. Neither reckless nor unlawful operation of the vehicle brings liability for an injury resulting therefrom within the exception, unless the conduct appears to have been so in disregard of the consequences to another that it can be said to have been wanton as well as wilful.”
Black’s Law Dictionary defines Willful and Malicious Injury as follows:
“The word ‘Willful,’ as used in this phrase in the Bankruptcy Act July 1, 1898, C. 541, Sec 17(2), 30 Stat. 550, as amended by the Act of Feb. 5, 1903, c. 487, 32 Stat. 797 (11 USCA sec 35), means intentional though not necessarily deliberate . there must be an intent to commit a wrong either through actual malice or from which malice will be imputed. Such an injury does not necessarily involve hatred or ill will, as a state of mind, but arises from intentional wrong, committed without just cause or excuse.”
We do not believe that the act of the defendant, in traveling the particular street, and under the particular circumstances, was of such a nature as to render him guilty of willful or malicious negligence. His wrong was merely a failure to keep a proper lookout, under the circumstances, and his failure to see the child in time. The record shows that he applied his brakes in a vain effort to avoid the accident, and, although he is guilty of negligence, we do not believe that he was guilty of willful and malicious conduct. Certainly none of the cases on which the Lower Court based its judgment indicated any willful or malicious negligence on the part of the wrongdoer.
The petitioner cites Rosen v. Shingleur, La.App., 47 So.2d 141, as basis for its claim of willful and malicious negligence on the part of the defendant. Such case involved an accident by a drunken driver, which would certainly, in our estimation, show a deliberate lack of care for the safety of others on the part of the drunk driver. There is nothing, however, in the record before us which would indicate that the defendant before us was intoxicated in the slightest degree.
From the record, as a whole, we find that the defendant was responsible for the death of the minor child of petitioner. The negligence attributable to defendant, however, was not such as would constitute “willful injuries” under the provisions of the Bankruptcy laws.
*316 For the reasons assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioners.
Judgment Affirmed.