SAVOY, Judge ad hoc.
This is an action in tort instituted by Elvire Deville LaFleur, individually and as natural tutrix of her three minor children, namely, Evella LaFleur, Ellie LaFleur, and Sylvia LaFleur, against Hubert B. Fonte-not and Dalin B. Fontenot. Judgment was rendered in favor of plaintiffs and against the defendant, Hubert B. Fontenot, finding that the said Hubert B. Fontenot was grossly and wantonly negligent and that his negligence was the proximate cause of the accident which resulted in the death of Dillard LaFleur. Plaintiffs are the wife and. children of the decedent, Dillard La-Fleur. Judgment was further rendered finding that the driver of the Dalin B. Fontenot vehicle was not guilty of any negligence, and accordingly, judgment was not rendered against Dalin B. Fontenot. From this judgment, the defendant, Hubert B. Fontenot, has appealed to this Honorable Court, and inasmuch as plaintiffs have not answered the appeal or appealed from the judgment of the trial court, the defendant, Dálin B. Fontenot, is not involved in the appeal. The district judge ad hoc did not give any written reasons for judgment.
The evidence discloses that plaintiff’s husband, Dillard LaFleur, was a passenger in one 1952 Studebaker taxicab owned by one Dalin B. Fontenot on August 22, 1952, at approximately the hour of one o’clock a. m. Said taxi was being driven by one Harris Fonteno.t on the night in question in a westerly direction on Louisiana Highway No. 22. He was transporting passengers from Ville Platte to the Delta Club, which was located approximately two miles west of the Town of Ville Platte, Louisiana. While they were proceeding west on Louisiana Highway No. 22, the defendant, Hubert B. Fontenot, was also proceeding in the same direction and without cause or justification, ran into the rear end of said taxicab, knocking said taxicab from the roadway and as it left the roadway it somersaulted several times and landed in a drainage canal; and as á result thereof, plaintiff’s husband, Dillard LaFleur, met his death.
Since counsel for defendant concedes that the negligence. of his client, Hubert B. Fontenot, was the sole and proximate cause of the accident and subsequent death of Dillard LaFleur, husband of plaintiff and father of the three minor children born of the union between the plaintiff and the decedent, the only question for determination by this Court is whether the act or acts of Hubert Fontenot were of such a nature to-be classified as willful and malicious so as to prevent defendant from being discharged from said accident and resulting judgment under the provisions of the Federal Bankruptcy Act, namely 11 U.S.C.A. § 35.
In plaintiff’s petition,' it was alleged among other things that at the time of the accident, defendant, Hubert B. Fontenot, was driving his car under the influence of liquor and while intoxicated.
The defendant, Hubert B. Fontenot, admitted while on the stand that he had five beers between the time he stopped working and the time of the accident.
In connection with the question as to whether the defendant, Hubert B. Fonte-not, was drinking sufficiently to place him within the provisions of the Bankruptcy Act, the following people testified
*540 Francis Fontenot testified as follows (Page 35 et seq., transcript) :
“Q. Did Hubert B. Fontenot ask you to ride with him in his automobile ? A. Yes.
"Q. Why didn’t you ride with him? A. Because I figured that he had too much to drink.”
******
“Q. You said Hubert B. Fontenot was drunk? A. I said he had been drinking too much for me to ride with him.
“Q. Was he staggering? A. No, he was singing.
“Q. You said he was drunk because he was singing? A. No.
“Q. How can you tell whether a man has been drinking? A. By the way he looks.
“Q. Have I been drinking? A. I do not think so.
“Q. How can you tell a man has been drinking ? A. I do not think so.
“Q. How can you tell a man has been drinking? A. He did not have his direction and he was loud. I ordered some coffee for him, and he went out and I drank it. I wanted another cup of coffee.
“Q. Why do you think he was drunk? A. By his appearance.
“Q. Have you seen Hubert drunk before? A. Yes.”
Sam Miller testified as follows (Page 42 et seq., transcript):
“Q. Do you know Hubert B. Fonte-not? A. Yes.
“Q. Did you have occasion to see Hubert on the night of August 21, 1952? A. Yes.
“Q. Where did you see him? A. At my cafe.
“Q. What was he doing there? A. At the time I got there, he was. drinking beer.
“Q. Had he consumed a lot of beer? A. Not that I had seen.
“Q. Was' Mr. Fontenot intoxicated? A. From his appearance, he: had been drinking.
“Q. Was he acting rational? A.. Not when I came in. He had been before.
“Q. When did you come in? A.. About nine-thirty.
“Q. What time did you go to your cafe?
“Q. Why did you go there? A. I usually went there to check. I was-called because there was some interference in the cafe.
“Q. What was that so-called interference? A. Hubert Fontenot was cutting up inside.
“Q. When you got to the place, was Mr. Fontenot behaving himself? A. Yes.
“Q. When did he leave your place? A. About ten-thirty.
“Q. Was it necessary that you evict him? A. No.
“Q. Did he appear to be under the influence of liquor? A. Yes, because he drank while I was there.
“Q. How many did he drink? A„ about three (3) glasses of beer.”
******
“Q. You have a restaurant and you see many people drinking beer and' when someone is intoxicated, you asked them to quit drinking, and in this case you did not refuse to sell the-beer? A. Yes, I did.
“Q. Were you closing? A. No.
“Q. What time did you close? A. About half an hour after that.
*541 “Q. Did he seem to be intoxicated?. A. Yes.
“Q. Due to something communicated to you, you refused to sell him beer? A. That’s right.”
State Trooper Roland LaFleur testified as follows (Page 48 et seq., transcript):
“Q. Did you interview Hubert B. Fontenot, who was driving the 1949 Mercury coach? A. Yes.
“Q. Did he smell of intoxicants? A. Yes. When I got there I did not notice that he had been drinking. I took him in the car and I could smell him. I got there sometime after the accident. I imagine it was an hour before I got there.”
******
“Q. You have testified that you smelled intoxicating liquor on Hubert Fontenot’s breath. Could you tell us what kind of liquor you smelled? A. No. It smelled like beer or wine. * # #
“Q. When you smelled liquor, that was when you closed the door and window of your car? A. Yes.
“Q. Could you tell if the odor was coming from his clothes or his breath? A. I would say it was from his breath.”
The Court is convinced that Hubert Fon-tenot had been drinking to a point where it was not safe for him to be driving a vehicle on the night on which the accident occurred.
11 U.S.C.A. § 35, sub. a(2), provides “A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part; except * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another * * *
In the case of Den Haerynck v. Thompson, 228 F.2d 72, 74, the Court of Appeal for the 10th Circuit had this to say about the meaning of the terms willful and malicious injuries, to-wit:
“ * * * it is settled law that such conduct does not necessarily mean or involve a malignant spirit or a specific intention to injure a particular person or harm his property. A willful disregard of that which one knows to be his duty, or an act which is wrongful in and of itself, and which necessarily causes injury, if done intentionally, is done willfully and maliciously, within the scope of the exception to dischargeability created by the statute. And ‘In order to come within that meaning as a judgment for a wilful and malicious injury to person or property, it is not necessary that the cause of action be based upon special malice, so that without it the action could not be maintained.’ Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 508, 48 L.Ed. 754; McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed 205.”
The decision in the Den Haerynck case, supra, was approved in' this state in the case of Rosen v. Shingleur, La.App. 1 Cir., 1954, 47 So.2d 141.
The cases of Rembert v. Robinson, La. App., 65 So.2d 805 and Matthews v. Franklin, La.App., 74 So.2d 309, are distinguishable from the case at bar in that in the latter two cases the defendants in each case had not been drinking and the cases-involved cases of ordinary and simple negligence, whereas, the defendant, Hubert B. Fontenot in the case at bar had been drinking and was driving at a high rate of speed prior to the accident.
The Court concludes that the judgment of the trial court is correct, and it is accordingly affirmed.
Judgment affirmed.
TATE, J., recused.