## ARMOUR FERTILIZER WORKS v. PENINGER.

### No. 4869.

Court of Appeal of Louisiana.
Second Circuit.

Jan. 9, 1935.

A. V. Hundley, of Alexandria, for appellant.

Polk & Robinson, of Alexandria, for appellee.

DREW, Judge.

The lower court has stated the issues and facts of this case correctly in a written opinion, which is as follows:

"Plaintiff filed this suit on October 2, 1930, to recover $904.54, with interest and attorney's fees, for balance alleged to be due on a bill of fertilizer consigned to defendant February 28th previous.

"Defendant was adjudicated a bankrupt on October 6th, following the filing of this suit, whereupon no further proceedings were had, and in due course the adjudicatee was granted a discharge.

"Anticipating that defendant would take bankruptcy, plaintiff set up in petition a state of facts tending to show that the nature of the debt sued on was such that excepted it from discharge in bankruptcy, under the bankrupt law; that the obligation was one due on account of mis-appropriation of funds in a fiduciary capacity, and that credit was extended to defendant as a result of false representations made by defendant, upon the faith of which the fertilizer was consigned to him. Answer was filed and the case went to trial upon these issues.

"The facts as disclosed by the testimony are substantially as follows:

"Defendant, for many years, had been engaged in general mercantile business at Glenmora in this Parish, and had been buying his commercial fertilizer used in his trade from other concerns on open account. In February, 1930, defendant by letter requested plaintiff to have its representative call and state its proposition on its fertilizer. Shortly thereafter plaintiff's representative, Mr. Leverich, called, resulting in the signing by defendant of an agreement whereby plaintiff was to appoint defendant as its agent to receive shipments on consignment on quantities of its fertilizer from time to time and sell same on commission for plaintiff's account, defendant to remit to plaintiff the cash proceeds, less commissions, as sales were made, and to deliver back to plaintiff upon demand such as may not have been sold, it being stipulated that the ownership of the fertilizer should remain in plaintiff. Defendant sold some of the fertilizer, remitted plaintiff only $100.00, and when he was adjudicated in bankruptcy, he delivered to plaintiff the remaining unsold fertilizer, received credit for same, leaving a balance of $730.60, representing the portion of fertilizer sold and unaccounted for.

"Defendant, however, contends and so testified that his understanding was that he bought the fertilizer on open account just as he had been doing from other concerns previ-

ously. Inasmuch as the question of defendant's acting for plaintiff in a fiduciary capacity as plaintiff's agent is concerned, that contention has been abandoned by plaintiff and we shall so consider it.

"The remaining question is whether or not the statement given by defendant of his financial condition when he obtained the fertilizer was false to the extent that his discharge in the bankruptcy proceedings did not effect a discharge of this particular obligation.

"Section 35, title 11 USCA, reads (pertinent part quoted):

" 'A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as * * * are liabilities for obtaining property by false pretensions or false representations. * * * '

"The testimony appears to warrant the finding that Mr. Peninger's statements to Mr. Leverich as to his financial condition, made for the purpose of obtaining the fertilizer, were in a large measure false, and that it was on the strength of these false statements plaintiff relied in entrusting defendant with same to sell in course of business. That defendant made the statements can hardly be questioned, for certainly Mr. Leverich could not have been expected to frame in his own imagination a set of facts concerning Mr. Peninger's various and sundry properties, their kinds, locations and values, but he must have obtained the data from Mr. Peninger direct. It is true Mr. Peninger refused to sign the document containing this data reduced to writing by Mr. Leverich as verbally stated to him by Mr. Peninger, nevertheless it constituted Peninger's statements and representations concerning his financial condition made for the purpose of being submitted to plaintiff company as the basis for extending defendant this line of credit and in fact was so used and relied upon and became material in the transaction out of which this lawsuit arose. The reason stated at the bottom margin of the document for defendant's refusal to sign his name to the statement is not that he said the statements were untrue, but that he 'would not handle if had to fill out a lot of questionaires. Amount involved too small,' and he adds, 'never been sued yet.' Rather than to create cause for suspicion, it appears the more reasonable that defendant meant to strengthen the impression that he considered a matter of a thousand or more dollars worth of fertilizer as a small item, hardly worthy of comment, compared to his splendid financial condition and reputation for paying his debts.

"This data contained in the statement was given on the 15th of February, 1930. It showed that defendant was worth net some $37,800.00. In September following, some six or seven months later, defendant filed his schedule of assets and liabilities in bankruptcy proceedings showing that his liabilities exceeded his assets by $2,784.00, a shrinkage of $40,584.00 within that short period of time. This would not necessarily appear unreasonable had defendant been engaged in stock market manipulations or some other form of highly speculative business. But for an ordinary country or small town merchant of many years' experience and successful to the extent that he had never been sued, as defendant is shown to have been, it is inconceivable that he was worth anything approaching the amount he represented himself to be such a short time before he took bankruptcy.

"The court does not have before it the testimony as transcribed showing exact figures, but it well recalls that the disparity between values furnished by defendant to Mr. Leverich of many items of his property and the prices at which he subsequently sold some of it was so great that common reason leads inevitably to the conclusion that the values placed upon them were unreasonably exaggerated, and in fact, false. He could have as easily given a reasonable value in line with true worth as to give the values he did give. Being the good business man that he was, he certainly knew much more accurately these values than he stated.

"According to his testimony, defendant's liabilities at the time of furnishing the data to plaintiff were much greater than the statement shows. These statements were likewise materially false, as well as misleading, yet were relied upon by plaintiff in extending credit to defendant.

"In construing the testimony as a whole with the law and jurisprudence on the subject, the court is of the opinion that the bankruptcy proceedings had by defendant and his discharge thereunder, did not have the effect of discharging the obligation herein sued on and therefore plaintiff is entitled to recover the sum of $730.60, the true amount of balance as agreed to exist in this controversy, together with legal interest from judicial demand, and all costs; claim for attorney's fee is rejected; and it is so ordered."

■ While it is true the representations made by defendant were not in writing, it is

not necessary for them to be in writing to except defendant from the discharge. It is necessary for them to be in writing to prevent the discharge.

We find the judgment of the lower court to be correct, and it is affirmed, with costs.