89 So.2d 508 (1956)
ACCOUNTS SUPERVISION COMPANY, d/b/a Asco Loan Company, Plaintiff-Appellee,
v.
Charles ATLEY, Defendant-Appellant.
No. 4232.
Court of Appeal of Louisiana, First Circuit.
June 29, 1956.
Rehearing Denied September 24, 1956.
Newton C. Dalton, H. G. Bagwell, Baton Rouge, for appellant.
Franz Joseph Baddock, Baton Rouge, for appellee.
*509 TATE, Judge.
This is a suit by plaintiff finance company (hereinafter denoted as "Asco Loan") to collect the balance due on a promissory note. Defendant Atley pleads discharge in bankruptcy as defense and appeals from adverse judgment.
The note is dated July 13, 1954. Defendant Atley filed a bankruptcy petition on February 18, 1955 and was adjudicated a bankrupt five days later. It is not disputed that his liability herein would be discharged by his adjudication as a bankrupt, except for the possible applicability of the Bankruptcy Act, specifically, 11 U.S.C.A. § 35, which provides insofar as here pertinent:
"A discharge in bankruptcy shall release a bankrupt from all his provable debts, * * * except such as * * (2) are liabilities for obtaining money or property by false pretenses or false representations * * *."
In Personal Finance Co. of Lake Charles, Inc., v. Huber, La.App. 1 Cir., 77 So.2d 740, at page 742, we have recently restated the settled interpretation of this statute, quoting from the case of De Latour v. Lala, 15 La.App. 276, 131 So. 211, 212 as follows:
"`Analyzing this language, it would appear to us that, before section 17 (11 U.S.C.A. § 35) would be applicable, the plaintiff must show: (1) That defendant made false representations; (2) that these representations were made with the intention of defrauding the plaintiff, and (3) that the plaintiff relied upon and was misled by the false pretenses or representations.'"
Otherwise stated, "the bankrupt's representations must have been material and false in fact, must have been made with an intent to deceive and defraud, and the creditor must have believed, acted, and relied upon them to its prejudice," Annotation, "What constitutes false representations * * * rendering liability * * nondischargeable," 17 A.L.R.2d 1208, at page 1209. See Annotation, "Exceptions in discharge provisions of Bankruptcy Act," etc., 133 A.L.R. 440, at pages 448-460.
See also: 8 C.J.S., Verbo Bankruptcy, § 573, p. 1513, at pages 1514-1515; 6 Am. Jur. 1007, Verbo "Bankruptcy", Section 781.
The De Latour case further stated, 131 So. 212: "The burden of proof is upon the creditor, who claims that his duly scheduled debt is excepted from the operation of the discharge in bankruptcy because of fraud."
The face amount of the note sued upon, dated July 13, 1954, was $1,170. Asco Loan's former manager testified from office records that this face amount represented the following disbursements or charges: Cash to Atley, $240 (which Atley testified was secured for the purpose of payment upon an outstanding grocery bill); life insurance on Atley to secure face amount of note, $46.80; Commerce Loan Co. (to pay off one of two loans outstanding with that finance company), $561.78; discount of face amount of note (charged by Asco Loan as its profit on the loan), $321.42.
The alleged misrepresentation by Atley consisted of a "Financial Statement" containing the following printed statements:
"I hereby apply to you for a loan of $...... For the purpose of showing my ability to repay the same and to induce you to grant said loan, I hereby declare that a list of all my debts and liabilities as follows:
(Name of Creditor) (Amount)
[Here follows an illegible line of scribbling consisting apparently of two words in which at most four or five disconnected characters resemble letters of the alphabet.]
"I hereby state, affirm, represent and warrant to you that my total indebtedness and liabilities on this date do not exceed [$1170.00]".
*510 The bracketed sum of $1,170.00 was filled in by pen by Asco Loan's manager. The statement was signed by Atley, and the illegible line was technically written by the hand of Atley, who is illiterate.
As to this alleged misrepresentation, the District Court stated:
"The defendant testified in this case and he impressed me as being a well-meaning, but typically illiterate Negro laborer, who on his own originality could not spell a single word he is said to have written * * * I give judgment for plaintiff in the case with considerable misgivings and doubt that the plaintiff made this loan on false representations that defendant did not owe any other debts. Mr. Thomas [Asco Loan's manager] testified that if he had been aware of other debts he would not have made the loan. * * * There is another phase of the matter on which I look with some suspicion and that is the fact that Mr. Thomas had this defendant try to write the financial statement in his own handwriting, when I am sure Mr. Thomas had to spell out to him every word on it, because of defendant's total lack of learning and inability to write. I think this was done to conform to the pattern set by the facts and the decision in Morris Finance Co. v. Dickerson, La.App., 57 So.2d 786."
Louis Thomas, Asco Loan's former manager, admitted that he himself could not decipher the illegible line on the "financial statement", but felt it was supposed to represent "I owe Asco Loan only", or words to this effect. Atley (who could neither read nor write) testified that as part of the paper work to receive the loan, he had endeavored to copy on the page what the manager told him to write there. He thought the intended meaning of the line was "Don't owe no loan company but Asco."
Atley testified positively that he had informed Asco Loan's manager that he was borrowing this money in order to pay his grocery bill and to consolidate both notes owed by him to the Commerce Loan Co.; however, he said, Asco Loan's manager had told him Asco Loan could refinance only one of the latter two debts, plus the grocery bill. Atley further stated that he had not been asked as to certain furniture, hospital, and funeral debts, or whether he owed any other debts.
Thomas, the manager (working for another loan company at time of trial), testified he was not informed of these other debts, despite his questioning of Atley concerning any other indebtedness. However, he admitted he had no independent recollection of the circumstances of the loan.[1]
The substance of Thomas's testimony concerning Atley's nondisclosure of other debts is, Tr-37-38:
"Q. In your conversation with Charles Atley did he disclose any extensive indebtedness on his part other than to finance companies?
"A. Could I answer that in my own way. Would that be permissible? On a loan of this type when you make it you don't make a loan like this to get a person half way out of debt.

*511 You are defeating your own purposes if you do. The object of a loan like that is to clear a person's liability up and make his payments be smaller so that he can take care of it in accordance with his salary. That's the reason this loan was made. It was supposed to have cleaned him out of debt for he told me it would. I loaned him the money on the basis of the information that I got from him on that score. Had I known that the man had Four or Five Thousand Dollars outstanding in debts I certainly would not have made a Thousand Dollar loan to have gotten him out of debt."
But Thomas was mistaken in this testimony because he himself admits thatat the same time the present loan was made to his knowledge Atley in addition owed Asco Loan $300 on a prior loan (Tr-48), and that he had knowledge of another debt (besides the one refinanced) due by Atley to Commerce Loan in the amount of $297 (Tr-9, Tr-34); although Thomas stated he didn't "believe" that the information from the Lenders Exchange indicated Atley was maker on Commerce Loan's $297 note, but rather endorser.
The testimony concerning the so called "financial statement" (completed by defendant Asco Loan's manager, and upon which the illiterate Atley signed his name and made an illegible notation at the direction of said manager) indicates that there is some question that a serious effort was made to obtain or to record a complete and accurate "financial statement". The said statement for instance indicates that the alleged total indebtedness of Atley was $1,170 in the application which was executed prior to the loan (as naturally subsequent thereto defendant could not claim to have loaned money in reliance thereupon), which is the exact amount of the note sued upon. The note sued upon, however, was obtained to pay debts amounting only to $801 (the remainder of the debt being discount and insurance charges for obtaining the loan). This figure further leaves out of account two other finance company debts approximating $600 (one to Asco Loan itself) admittedly known at this time by Asco Loan.
There is considerable force to defendant's argument that the so called "financial statement" was taken by Asco Loan and completed by its manager, not with any serious purpose to rely thereupon[2] but merely as a device obtained perfunctorily from all loan applicants in order to give technical grounds to contest any subsequent discharges in bankruptcy of these applicants.
Howsoever it may be, we do not find under the facts of this case that plaintiff Asco Loan has borne its burden of proving that the false financial statement was executed by defendant Atley with intent to misrepresent or defraud.
"Something more than constructive fraud or fraud in law in procuring property on credit is required to except the claim from a discharge," 6 Am.Jur. 1007, Verbo "Bankruptcy", Section 781. "[F]raud is never presumed, and * * * to establish the fraud exceptionally strong proof must be adduced. [Many cases cited.] It has also been said that evidence showing the fraud was probable or that the circumstances partook of a suspicious character is not sufficient, and that the fraud must be established by proof stronger than the mere preponderance of the evidence *512 [cases cited]", McClatchey v. Guaranty Bank & Trust Co., 228 La. 1103, 85 So. 2d 6, at page 8.
That this strong burden of proof was not successfully borne is manifest from the foregoing discussion and from the strong doubts entertained by the District Court as to its own disposition of this suit. A pro forma completion of a blank form, putting down (illegibly) what the lender's agent directs him to, does not amount to a fraudulent false statement by the borrower; and especially when the agent himself knows the attempted notations are incorrect.
Since defendant has not successfully proved fraudulent execution of a false financial statement, we think inapplicable the cases cited by Asco Loan's able counsel, some of which may hold, as he urges, that one who executes a false financial statement has the burden of proving that the finance company in question did not rely upon same in affording credit to the bankrupt; Public Loan Corp. v. Adams, La.App., 66 So.2d 6; Morris Finance & Loan v. Dickerson, La.App. 1 Cir., 57 So.2d 786; Personal Finance Co. of Shreveport v. Murphy, La. App., 53 So.2d 421; Armour Fertilizer Works v. Peninger, La.App., 158 So. 241; Industrial Bank of Commerce v. Bissell, 2 Cir., 219 F.2d 624.
The District Court disallowed attorney's fees and interest discount charges, apparently on the theory that the exception from discharge applies only to the money actually obtained by false pretenses and not to interest or attorney's fees thereupon, since "It is only a liability in tort which is excepted from discharge under the foregoing provision," 6 Am.Jur. 1006, Verbo "Bankruptcy", Section 780. See also 8 C.J.S., Verbo Bankruptcy, § 573, p. 1515; Annotation, 17 A.L.R.2d 1208. See also Armour Fertilizer Works v. Peninger, La. App., 158 So. 241. Plaintiff in brief seeks to have the judgment amended to award these additional amounts. It is unnecessary to discuss this request for amendment, not only in view of the disposition of the main demand, but also because a request for increase of award in a brief will not be considered in the absence of appeal or answer to the appeal. See e. g., Louisiana Power & Light Co. v. Dileo, La.App., 79 So.2d 150, at page 153.
For the above and foregoing reasons, the judgment of the District Court herein is reversed, and the suit of plaintiff is dismissed at plaintiff's cost.
Reversed.
NOTES
[1] His testimony at Tr-58:

"A The only thing that I can say there, Judge, is by what I have written down. I mean as far as definite remembrance of what was exactly said, no, sir, I don't remember that. It would be impossible for me to remember what was exactly said. During the course of conversation with a man I would write down points that we had discussed.
And as given at Tr-32-33:
"A He said that he called up. I wouldn't say that he called up or that he didn't. That was a year ago, frankly I don't remember. I was handling on the average of a hundred loans or more a month. It is hard to remember a certain thing. In all probability he did call and I talked to him over the phone."
[2] The evidence indicates that Atley had successfully paid two former loans from Asco Loan and enjoyed an excellent credit rating up until the time of his bankruptcy, which latter was caused partially by the heavy debts incurred during the prolonged last illness of his wife. He had been steadily employed for several years at a salary of $275 per month. Before approving the loan, Asco Loan sent its investigator to Atley's neighborhood to inquire as to his reputation, to evaluate his furniture and house, and to make a report concerning same.